# K<small>ATZ</small>M<small>ELINGER</small>
280 M<small>ADISON</small> A<small>VENUE</small>, S<small>UITE</small> 600
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10016
www.katzmelinger.com

| | |
|---|---:|
| Nicola Ciliotta | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | nciliotta@katzmelinger.com |

March 12, 2021

**<u>Via ECF</u>**
The Honorable Nelson S. Román
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

      Re:    *Aguirre v. Gianfranco Pizzeria & Restaurant, Inc. et al.*
              <u>Civil Action No. 7:20-cv-09311</u>

Dear Judge Román:

      We are attorneys for the parties in this matter, and write jointly to seek approval of the parties' agreement to settle plaintiff Paulino Aguirre's ("Plaintiff") claim for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). The parties respectfully request that the Court approve the settlement agreement, a copy of which is attached hereto as **Exhibit 1**, and allow the parties to discontinue this matter with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2).

      As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### **<u>Background</u>**

      This matter arises out of Plaintiff's employment with Gianfranco Pizzeria & Restaurant, Inc. ("Gianfranco Pizzeria") and Angelo Carillo (collectively, "Defendants"). Plaintiff alleges that he worked for Defendants as a pizza maker from in or around 2013 until in or around March 2020, and then again from in or around May 2020 until in or around September 2020. Plaintiff alleges that he was, at all times, a non-exempt employee under the FLSA and that, although he regularly worked more than forty (40) hours per week throughout his employment, he did not receive overtime compensation for any overtime hours worked. Rather, Plaintiff alleges that he was compensated at a fixed hourly rate for all hours worked, including those over forty (40) per week.

      Based on the foregoing, Plaintiff alleges that Defendants owe him approximately $30,404.75 in overtime wages, exclusive of liquidated damages, prejudgment interest, costs, and attorneys' fees.

Defendants adamantly deny any and all wrongdoing and allege that Plaintiff was properly compensated for all hours worked. While Plaintiff and Defendants continue to express opposing views on the likely outcome of this matter, they understand that the complex factual issues in this matter would likely require a trial, and that each of them would expend significant time and costs to prepare for trial. While Plaintiff and Defendants have agreed to a settlement, there remains significant disagreement over the amount of alleged overtime hours worked by Plaintiff and the amount that Plaintiff was compensated. Given the uncertainty on both sides, the risk to Defendants of a substantial judgment against them, the risk to Plaintiff of failing to prevail on all of his claims, and the risk to Plaintiff of being unable to enforce a judgment against Defendants who may be unable to satisfy a large judgment, the amount agreed to by Plaintiff and Defendants represents a fair and reasonable settlement at such an early stage of the litigation.

**The Proposed Settlement Should Be Approved**

1. The settlement amount is fair and reasonable

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's FLSA claim rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel and the settlement amount, $48,000.00, results in a recovery to Plaintiff in the total amount of $31,597.34, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk that Plaintiff would not prevail on all of his claims after a trial; and the risk that Plaintiff would be unable to collect on a judgment against Defendants that may lack the financial resources to satisfy the judgment.

2. The settlement agreement was the result of arm's length negotiations by the parties

The proposed settlement is also the product of negotiation between parties represented by competent counsel following extensive settlement negotiations. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining between the represented parties, along with the information exchanged during informal discovery, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through limited discovery and candid discussions between counsel, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 WL 1364147, at *4 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, as Plaintiff is no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014

WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur because Plaintiff is no longer employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

<u>Plaintiff's counsel's fees are reasonable</u>

Under the proposed agreement, Plaintiff's counsel would recover $604.00 as reimbursement for costs and expenses [1] and $15,798.66 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover, out of Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff after reimbursement of costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014); see *also Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 WL 6335978, at *3 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 2**, Plaintiff's counsel has spent a total of 18.40 hours on this matter as follows: Nicola Ciliotta, 14.50 hours; Nicole Grunfeld, 0.80 hours; and Kenneth Katz, 3.10 hours. Plaintiff's counsels' hourly rates - $275.00, $375.00, and $425.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (internal quotation marks and citation omitted).

Katz Melinger PLLC is a boutique firm with substantial experience representing plaintiffs in wage and hour matters.

Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018. Mr. Ciliotta was admitted to practice in New York in 2019. Since joining the firm in 2018, Mr. Ciliotta has focused his practice exclusively on employment law matters.

---

[1] Plaintiff's costs and expenses are as follows: $400.00 for the initial filing fee; and $204.00 for process server fees.

Ms. Grunfeld has been the senior associate at Katz Melinger PLLC for more than seven years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and has focused on Plaintiff's employment matters for more than twelve years. She currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers Association.

Mr. Katz is the sole member of Katz Melinger PLLC. Mr. Katz earned his B.A. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to practice in the courts of New York in 2004, and has focused his practice in litigation since 2003.

The $15,798.66 fee sought by Plaintiff's counsel is above Plaintiff's counsel's "lodestar" amount of $5,605.00, resulting in a multiplier of 2.81, but it falls within the range of a reasonable multiplier, and should accordingly be found reasonable. *See e.g. Hernandez v. Merrill Lynch & Co.*, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (approving a 3.8 multiplier and collecting cases). As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff recovered a substantial portion of his alleged damages and will avoid the significant risk of either receiving an unfavorable outcome in this matter or, if Plaintiff ultimately prevailed in his claims, attempting to enforce a judgment against Defendants, which may be unable to satisfy a large judgment.

Plaintiff's estimated unpaid wages in this matter total approximately $30,000.00 (excluding liquidated damages). Defendants strongly dispute that Plaintiff worked the number of hours alleged, and insist that he was paid correctly for all hours worked. Plaintiff's counsel secured a $48,000.00 settlement, representing approximately 160% of Plaintiff's alleged compensatory damages and approximately 68% of his maximum possible recovery. The settlement in this matter is thus considered a highly successful one. *See, e.g., Pinzon v. Jony Food Corp.*, 2018 WL 2371737, at *2 (S.D.N.Y. 2018) ("Settling for even thirty percent of the total potential recovery is significant enough in this case to weigh in favor of approval"); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (settlement of approximately 25% of estimated damages "is a substantial proportion of the maximum possible recovery").

Furthermore, the settlement is particularly successful and the attorneys' fees are reasonable given the early procedural posture of this matter. This positive settlement was reached only four (4) months after filing Plaintiff's complaint and was agreed upon before attending an initial conference. Courts in this district have noted that the early procedural posture of a settlement partially warrants approval of proposed attorneys' fees. *See e.g., Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. 2016) (opting to utilize percentage method, as it "avoids the lodestar method's potential to create a disincentive to early settlement"); *Pinzon v. Jony Food Corp.*, 2018 WL 2371737 at *3 (approving a multiplier of 5.23 when settlement was reached prior to defendant's answer, and recognizing the importance of encouraging early settlement).

Additionally, we respectfully note that Plaintiff's counsel routinely recovers awards of attorneys' fees well below its lodestar amount in similar cases that do not settle on such favorable

4

terms. This risk, which is inherent in cases in which counsel agrees to represent a client on a contingency basis, necessarily warrants that counsel occasionally recover attorneys' fees in excess of its lodestar amount. *See e.g. Chamoro v. 293 3rd Café Inc.*, 2016 WL 5719799, at *5 (S.D.N.Y. Sept. 30, 2016) (approving a 1.38 multiplier of the lodestar based on "(1) the quality of the representation, (2) the magnitude of the settlement award, (3) the time and effort Plaintiffs' counsel spent litigating this action and securing settlement, and (4) the considerable risk involved with taking this case on a contingency fee basis"). This is particularly true where, as here, Plaintiff voluntarily agreed, both at the time of settlement and at his initial engagement of counsel, to a reasonable one-third fee arrangement; and (b) there are no absent class members whose interests are impacted by the fee arrangement without their explicit consent. *See Rangel*, 2013 WL, at *1 ("While attorney's fees in FLSA settlement agreements are subject to court approval for reasonableness, there is a greater range of reasonableness where, as here, the parties have settled on the fee through negotiation") (citations and internal quotation marks omitted).

Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of discontinuance with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1) (a) (ii).

Respectfully Submitted,

/s/ Nicola Ciliotta  
Nicola Ciliotta  
Katz Melinger PLLC  
280 Madison Avenue, Suite 600  
New York, New York 10016  
Telephone: (212) 460-0047  
Facsimile: (212) 428-6811  
Email: nciliotta@katzmelinger.com  
*Attorneys for Plaintiff*

/s/ Michael J. Raneri  
Michael J. Raneri  
Raneri, Light & O'Dell PLLC  
150 Grand Street, Suite 502  
White Plains, New York  
Telephone: (914) 948-5525  
Facsimile: (914) 948-5505  
Email: mjranieri@rlslawoffice.com  
*Attorneys for Defendants*